UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| STACIE RIVARD-PEDIGO | : | CIVIL ACTION NO.: |
| | : | |
| *Plaintiff,* | : | 3:17-cv-00568-WWE |
| | : | |
| v. | : | |
| | : | |
| OKEMO LIMITED LIABILITY | : | |
| COMPANY D/B/A OKEMO | : | |
| MOUNTAIN RESORT | : | |
| | : | |
| *Defendant.* | : | MAY 16, 2019 |

**DEFENDANT OKEMO LIMITED LIABILITY COMPANY
D/B/A OKEMO MOUNTAIN RESORT'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR JUDGMENT AS A MATTER OF LAW**

Pursuant to Rule 50 of the Federal Rules of Civil Procedure, Defendant Okemo Limited

Liability Company d/b/a Okemo Mountain Resort ("Okemo"), hereby submits the following

Memorandum of Law in Support of its Motion for Judgment as a Matter of Law.

**I.      INTRODUCTION**

Skiing is an active outdoor sport, and the Vermont Legislature has mandated through the

passage of Vermont Statute Title 12, §1037, commonly referred to as the "Sports Injury Statute," that:

"a person who takes part in any sport accepts as a matter of law the dangers that inhere therein

insofar as they are obvious and necessary." *Id.* Each witness who has testified at trial on the issue

of inherent risks of skiing has acknowledged that skier-skier collisions are an inherent risk of the

sport.

Simply stated, all evidence presented thus far establishes that Plaintiff was skiing at the

time of her injury and she was injured after a collision with Curtis Ficklin ("Ficklin"). A collision

with another skier is an inherent risk of skiing as acknowledged by Plaintiff and the other testifying

witnesses. As a skier, Plaintiff assumed this inherent risk and pursuant to the Sports Injury Statute, Plaintiff's claims against Okemo are barred as matter of law.

Moreover, even if this Court finds that reasonable minds could disagree as to whether Plaintiff's injuries were caused by a risk inherent in the sport, Plaintiff's claims nevertheless fail as a matter of law, as there is no competent evidence to support a finding that Ficklin was Okemo's agent or employee, acting within the scope of his employment, at the time of the alleged collision. As such, Plaintiff cannot establish, as a matter of law, that Okemo is vicariously liable for Ficklin's alleged negligence. Accordingly, Okemo respectfully requests that this Court grant its Motion for Judgment as a Matter of Law.

## II.    RELEVANT BACKGROUND

This suit arises from a skier-skier collision involving Plaintiff and Ficklin while both individuals were skiing in the vicinity of the Jackson Gore Junction at Okemo Mountain in Ludlow, Vermont.

Specifically, in the operative Amended Complaint, dated April 17, 2018, Plaintiff alleges that on or about February 20, 2017, she was skiing down the Mountain Road trail in the vicinity of the Jackson Gore Junction, when an "agent, servant, apparent agent, and/or employee of Okemo, named 'Curtis,'" violently collided with her at a "high and excessive rate of speed." *See* Amended Complaint, Count 1, at ¶ 8. Plaintiff alleges Okemo is vicariously liable for the negligent actions of its agent, servant, apparent agent, and/or employee, "Curtis." *Id.* at ¶ 10.

Plaintiff testified that as a skier, she was aware that injuries can happen, that injuries are a part of skiing, and that she cannot ski in the absence of the risk of injury. *See* Depo. Tr. S. Rivard-Pedigo, at 36:9-25; 37:1-17, attached hereto as *Exhibit A*.[1]

---

[1] Okemo cites to the deposition testimony of Plaintiff and other fact witnesses, but the trial testimony has been consistent therewith.

Plaintiff testified that collisions are a risk of skiing, and that the risk of a collision is present regardless of whether someone is skiing dangerously or not. *Id.,* at 38:5-20. Plaintiff further testified that as a skier, when she goes skiing, she understands she will encounter skiers with different abilities, including skiers who are out of control, and that when people are skiing out of control, collisions could occur. *Id.,* at 42:25, 43:1-20.

Plaintiff testified that she did not see Ficklin prior to the collision. *Id.,* at 78:5-15, 81:9-11. She recalls that Ficklin was not wearing a helmet, that he was carrying a backpack, and he was skiing without poles. *Id.,* at 89:17-21. Plaintiff does not recall what color jacket or pants Ficklin was wearing, and has **no** recollection of Ficklin wearing any sort of uniform. *Id.,* at 89:22-25.

Ficklin testified that he was off-duty at the time of the alleged incident. *See* Depo. Tr. C. Ficklin, at 40:10-17, 56:11-22, attached hereto as *Exhibit B*; *see also* Timesheet, attached hereto as *Exhibit C*. Specifically, Ficklin testified that on the date of the alleged collision, he worked in the morning from 6:59am – 8:11am, and then clocked out. *Exhibit B.,* at 55:14-23. After clocking out, Ficklin took off his uniform, and put on his own clothes and went skiing. *Id.,* at 56:5-8.

Ficklin testified that while skiing on February 20, 2017, his skiing did not have any relation to his job duties and he considered himself to be like any other skier. *Id.,* at 56:15-22. Ficklin testified that he was not wearing his uniform or nametag at the time of the collision and never wore his Okemo uniform or nametag while skiing. *Id.,* at 29:24; 30:1-2.

Ficklin further testified that skiing is not part of his job function as a lift operator. *Id.,* at 26:5-21; *see also* Okemo Mountain Resort Lift Operations Department Specific Manual Effective: November 1, 2016, attached hereto as *Exhibit D*. He further testified at trial, and the Lift Operations Department Specific Manual makes clear, that Ficklin was not authorized to ski as part of his job at Okemo.

3

Ficklin testified that following the collision, he approached Plaintiff and informed her that he worked for Okemo in an effort to make Plaintiff understand that he would not leave the scene. *Exhibit B*, at 70:17-24; 71:1. Ficklin never told Plaintiff that he was on duty. *Id.,* at 70:14-16.

In addition to Ficklin's testimony, Okemo's Vice President and General Manager at the time of the alleged incident, Bruce Schmidt ("Schmidt") – an Okemo Rule 30(b)(6) witness, testified that Ficklin was a bottom-lift operator, and that skiing was specifically excluded from Ficklin's job description and job duties. *See* Depo. Tr. B. Schmidt, 69: 14-23, attached hereto as *Exhibit E*. Schmidt further testified that he is not aware of any other collisions that Ficklin was involved in at Okemo, or anyplace else, either before or after the incident at issue, and he had no reason to believe that Ficklin presented any type of different or higher risk as a skier with respect to skier-skier collisions than any other skier on the mountain. *Id.,* at 81:22-24, 82: 1-9. Ficklin confirmed at his deposition and at trial that he had no prior history of collisions or discipline for his skiing. *Exhibit B*, at 49:7-17, 50:10-51:11.

## III.   **LEGAL STANDARD**

Federal Rule of Civil Procedure 50(a) provides, in pertinent part, as follows:

> (1) If a party has been fully heard on an issue during a jury trial, and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
>
> > (A) resolve the issue against the party; and
>
> > (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

*Id.*

A motion for judgment as a matter of law, may be made at any time before the case is submitted to the jury. *Id.* Rule 50(a) permits a District Court to enter judgment as a matter of law

4

against a party on an issue where there is no legally sufficient evidentiary basis for a reasonable jury to find for the party on that issue. *Cobb v. Pozzi*, 352 F.3d 79, 90 (2nd Cir. 2003). The standard for granting a motion for judgment made pursuant to Rule 50(a) is identical to the standard for granting a motion for summary judgment made pursuant to Rule 56. *Id.* Pursuant to Rule 56, a party is entitled to summary judgment on an issue when "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Moller v. North Shore University Hospital*, 12 F.3d 13 (2nd Cir. 1993) *quoting Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2nd Cir. 1992); *Blanchard v. Eli Lilly & Company*, 207 F.Supp.2d 308, 313 (D.Vt. 2002).

## IV. ARGUMENT

### A. Okemo is entitled to Judgement as a Matter of Law Based on the Applicability of the Vermont Sports Injury Statute

Plaintiff is barred from recovering in this action due to the applicability of the Sports Injury Statute which provides as follows:

> Notwithstanding the provisions of Section 1036 [relating to comparative negligence], a person who takes part in any sport accepts as a matter of law the dangers that inhere therein insofar as they are obvious and necessary.

*Id.*

Whether a risk is "obvious," "does not mean something easily observed by a skier who looked...[r]ather, an obvious risk was one inherent in the nature of the sport. *See Estate of Frant v. Haystack Grp., Inc.*, 162 Vt. 11, 15 (1994). Whether a risk is "necessary" under the statute, turns on whether "the effort required to remove it would be impossible to undertake or would impose an unreasonable burden. *Cernansky v. Lefebvre*, No. 2:14-CV-00180, 2016 WL 7335600, at *3 (D. Vt. Dec. 16, 2016) *citing Nelson v. Snowridge, Inc.*, 818 F. Supp. 80, 83 (D. Vt. 1993) (finding that ice is a necessary condition of skiing because "despite exhaustive grooming efforts, ice still

remains evident on at least some portion of most ski slopes in the East" and "[i]f a ski area were required to close a trail every time there was ice present, it would surely be forced to curtail its operations for a good part of the ski season").

Here, Plaintiff testified that as a skier, she was aware that injuries can happen, that injuries are a part of skiing, and that she cannot ski in the absence of the risk of injury. *See Exhibit A*, at 36:9-25; 37:1-17. Plaintiff testified that collisions are a risk of skiing, and that the risk of a collision is present regardless of whether someone is skiing dangerously or not. *Id.,* at 38:5-20. Plaintiff further testified that as a skier, when she goes skiing, she understands she will encounter skiers with different abilities, including skiers who are out of control, and that when people are skiing out of control, collisions could occur. *Id.,* at 42:25, 43:1-20.

Notwithstanding Plaintiff's own understanding of the risks, five fact witnesses – all of whom were called by Plaintiff as part of her case-in-chief - also acknowledged that skier-skier collisions are an inherent risk in the sport. *See* Depo. Tr. M. Dillon, at 14:1-13; Depo. Tr. C. Pedigo, at 13:24-25; 14:1-2; *Exhibit B*, at 52:14-17; 53:1-17; Depo. Tr. D. Lindskog, at 12:10-18; Depo. Tr. C. Swigart., at 11:20-25; 12:1-25; 13:1-3.[2] The testimony secured at trial was exactly the same as that testified to at depositions.

Although the issue of whether a risk is inherent in the sport of skiing is typically a question of fact for the jury to determine, where reasonable minds do not disagree as to whether a risk is obvious and necessary, summary judgment and / or a directed verdict is warranted. *See Nelson v. Snowridge, Inc.*, 818 F. Supp. 80, 84 (D. Vt. 1993) (granting summary judgment in favor of ski area operator and holding, a matter of law, that encountering ice is an inherent risk of skiing). Here,

---

[2] The deposition transcripts from M. Dillon, C. Pedigo, D. Lindskog, and C. Swigart, are attached hereto as *Exhibit F*.

6

the testimony clearly establishes a consensus among all fact witnesses that skier-skier collisions are inherent risk in the sport of skiing. This is a risk that cannot be removed from the sport.

When confronted with similar situations, Courts in other jurisdictions have uniformly held *as a matter of law* that that ski area operators are not liable for collisions between skiers, even when the collision is between customers and employees, whether on or off duty. In so holding, the courts note that skier-skier collisions are an inherent risk of the sport, and whether the skier causing the collision is an on-duty or off-duty employee of a ski area, is irrelevant to the analysis of whether a duty of care was owed. *See Glover v. Vail Corp.*, 955 F. Supp. 105 (D. Colo. 1997), *aff'd,* 137 F.3d 1444, (10th Cir. 1998) (granting summary judgment in favor of ski area operator where off-duty employee was involved in a skier-skier collision with customer even though witness testified that off-duty employee was skiing "faster than [he] had ever seen anyone before"); *Johnson ex rel. Johnson v. Bodenhausen*, 835 F. Supp. 2d 1092 (D. Colo. 2011) (granting summary judgment in favor of ski area operator where on-duty employee, ski instructor collided with minor plaintiff, noting that skier-skier collisions are a risk inherent in the sport"); *Hanus v. Loon Mountain Recreation Corp.*, 2014 DNH 075, 2014 WL 1513232, at *2 (D. N.H. Apr. 16, 2014) (same); *Towns v. Davidson*, 147 Cal. App. 4th 461 (2007) (same); *Camire v. Gunstock Area Comm'n*, 166 N.H. 374 (2014) (same).

The Supreme Court of California provided particularly useful insight into skier-skier collision law in case of *Cheong v. Antablin,* 16 Cal.4th 1063 (1997). In *Cheong,* two friends went skiing together at Alpine Meadows and collided. *Id.,* at 1066. The injured skier sued his friend. *Id.* The defendant provided a declaration that read as follows: "I was skiing faster than I was comfortable with, in that I felt I was skiing too fast for existing conditions. In reaction, I turned to my right in an effort to slow down, regain control and stop. As I did so, we collided." *Id.*

7

The Supreme Court of California affirmed the lower court's granting of summary judgment in favor of the defendant skier area operator. In so doing, the court noted that "[a]s a general rule, persons have a duty to use due care to avoid injury to others, and may be held liable if their careless conduct injures another person." (citations omitted). *Id.*, at 1068. The court further noted that "This general rule, however, does not apply to coparticipants in a sport, where conditions or conduct that otherwise might be viewed as dangerous often are an integral part of the sport itself.... In this respect, the nature of a sport is highly relevant in defining the duty of care owed by the particular defendant." (citations omitted) (internal quotation marks omitted). *Id.* The *Cheong* court continued by stating:

> In some situations, however, the careless conduct of others is treated as an 'inherent risk' of a sport, thus barring recovery by the plaintiff." Courts should not hold a sports participant liable to a coparticipant for ordinary careless conduct committed during the sport because in the heat of an active sporting event ..., a participant's normal energetic conduct often includes accidentally careless behavior.... [V]igorous participation in such sporting events likely would be chilled if legal liability were to be imposed on a participant on the basis of his or her ordinary careless conduct.
>
> For these reasons, the general test is that a participant in an active sport breaches a legal duty of care to other participants—i.e., engages in conduct that properly may subject him or her to financial liability—only if the participant intentionally injures another player or engages in conduct that is so reckless as to be totally outside the range of the ordinary activity involved in the sport. For these reasons, the general test is that a participant in an active sport breaches a legal duty of care to other participants—i.e., engages in conduct that properly may subject him or her to financial liability—only if the participant intentionally injures another player or engages in conduct that is so reckless as to be totally outside the range of the ordinary activity involved in the sport. (internal quotation marks omitted) (citations omitted).

*Id.*

Additionally, the California Appellate decision, *Towns v. Davidson*, 147 Cal. App. 4th 461 (2007), provides guidance regarding skier-skier collisions. In *Towns*, the plaintiff filed suit after a collision with and *on-duty employee*, Herbert Davidson ("Davidson"). Davidson was employed by defendant Mammoth Mountain Ski Area ("Mammoth") as a ski host manager. Part of his job duties

8

included skiing the slopes, checking with other ski hosts on the hill, and talking to the guests. He also was allowed to ski one or two runs during the day, and on occasion could do so with a spouse, relative or friend. At those times, he would still be on duty as a ski host and would be wearing a Mammoth uniform. Mammoth's policy manual for hosts, the Host Manual, required him to "always ski as a Host" when in uniform, and "to look out for the safety of our fellow employees and guests on and off the Hill." *Id.,* at 465.

The plaintiff filed suit against both Davidson and Mammoth. She alleged Davidson was skiing in a negligent and reckless manner. She also alleged Mammoth negligently failed to train and supervise Davidson. The defendants moved for summary judgment. They claimed the doctrine of primary assumption of risk excused them from liability for negligence and that there were no facts establishing recklessness. *Id.,* at 466. The trial court agreed and granted summary judgment in defendants' favor. Plaintiff appealed from the judgment, claiming primary assumption of risk does not apply because disputed issues of material fact existed on whether Davidson was a coparticipant in the sport when skiing while on duty, and whether Davidson was reckless in his skiing. *Id.*

On appeal, the Court of Appeal affirmed the lower court decision, holding that the doctrine of primary assumption of the risk applied, and that Davidson's employment was irrelevant. The court specifically noted, that "whether or not Davidson was employed by Mammoth, the inherent risks of injury from skiing down a snow-covered mountain include accidentally careless conduct by other skiers resulting in collisions. This risk is so inherent and obvious it goes without saying plaintiff assumed that risk no matter who the other skiers may be." *Id.,* at 469. The court further noted that "Mammoth's act of employing Davidson and requiring him to be on the slope did not increase the risk of injury inherent in skiing. Davidson was just another coparticipant in a dangerous activity who could accidentally cause injury. That he was also an employee subject to an employment policy to ski safely did not increase the risk of injury inherent in an already dangerous sport." *Id.,* at 470.

9

The *Towns* court also made a public policy argument, noting that holding Davidson and Mammoth liable would "fundamentally alter the nature of the sport. Davidson would no longer be able to ski as aggressively as the sport allows, and Mammoth would no longer hire persons to perform any type of skiing as part of their job, no matter the benefit and safety they can provide to Mammoth's guests. This is the very outcome primary assumption of risk is designed to prevent. Davidson's status as an employee of Mammoth did not bar operation of primary assumption of risk." *Id.*

Furthermore, a majority of states with ski statues specifically enumerate that a skier-skier collision is an inherent risk assumed in the sport of skiing. *See* Massachusetts G.L. c. 143, §§ 71H–71S ("A skier skiing downhill shall have the duty to avoid any collision with any other skier, person or object on the hill below him, and, except as otherwise provided in this chapter, the responsibility for collisions by any skier with any other skier or person shall be solely that of the skier or person involved and not that of the operator"); N.H. Rev. Stat. Ann. § 225-A:24 ("Each person who participates in the sport of skiing … accepts as a matter of law, the dangers inherent in the sport, and to that extent may not maintain an action against the operator for any injuries which result from such inherent risks, dangers, or hazards. The categories of such risks, hazards, or dangers which the skier or passenger assumes as a matter of law include… collisions with other skiers); N.J. Stat. Ann. § 5:13-5 ("A skier is deemed to have knowledge of and to assume the inherent risks of skiing … created by other skiers, and all other inherent conditions."); Wis. Stat. Ann. 167.33(2)(f) (stating a "ski operator is not liable for any injury or death that occurs as a result of any condition or risk accepted by the participant including the risk of collision with other participants in alpine sports, employees of a ski area operator, or ski area infrastructure"); Idaho Code Ann. § 6-1106 ("The responsibility for collisions by any skier while actually skiing, with any person, shall be solely that of the individual or individuals involved in such collision and not that of the ski area operator"); W. Va. Code Ann. § 20-3A-5 ("If while actually skiing, any skier

10

collides with any object or person, except an obviously intoxicated person of whom the ski area operator is aware, the responsibility for such collision shall be solely that of the skier or skiers involved and not that of the ski area operator."); Mich. Compiled Law 408.342(2) ("Each person who participates in the sport of skiing accepts the dangers that inhere in that sport insofar as the dangers are obvious and necessary. Those dangers include, but are not limited to … collisions with…other skiers").

The evidence submitted in this case clear establishes that Plaintiff's injures were caused by a risk inherent in the sport of skiing. Accordingly, the Court should grant Okemo's Motion for Judgment as a Matter of Law.

**B. Okemo is Entitled to Judgement as a Matter of Law as There is No Credible Evidence that Curtis Ficklin was Acting Within the Scope of His Employment at the Time of the Alleged Collision**

The Vermont Supreme Court has held that "[u]nder the settled doctrine of respondeat superior, an employer or master is held vicariously liable for the tortious acts of an employee or servant committed during, or incidental to, the scope of employment." *See Jenkins v. Miller*, No. 2:12-CV-184, 2017 WL 4402431, at *20 (D. Vt. Sept. 29, 2017) *citing Brueckner v. Norwich Univ.*, 169 Vt. 118, 122–23 (1999); *Doe v. Forrest*, 176 Vt. 476, 483 (2004).

"To be within the scope of employment, conduct must be of the same general nature as, or incidental to, the authorized conduct. Conduct of the servant falls within the scope of employment if:

> (a) it is of the kind the servant is employed to perform;
> (b) it occurs substantially within the authorized time and space limits;
> (c) it is actuated, at least in part, by a purpose to serve the master; and
> (d) in a case in which the force is intentionally used by the servant against another, it is not unexpectable by the master.

11

*Jenkins,* 2017 WL 4402431, at \*20 *citing* Restatement (Second) of Agency §§ 228(1), 228(2), 229(1) (1958).

Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time and space limits, or too little actuated by a purpose to serve the master." *Id.*; *citing* Restatement (Second) of Agency §§ 228(1), 228(2), 229(1) (1958); *see also Star Rest. v. Metro. Life Ins. Co.*, 105 Vt. 77, 163 A. 558, 559 (1933) (in order for a principle to be liable for an agent's torts, the tort must have been committed within the course of the agent's employment and within the scope of the actual authority conferred upon him for that purpose).

Plaintiff relies on Michael Dillon's ("Dillon") testimony regarding the supposed Okemo uniform jacket in an attempt to manufacture an argument that Ficklin was Okemo's agent at the time of the alleged collision. However, Dillon was the only fact witness who allegedly saw Ficklin in a "green, gray and black jacket," and he does not recall seeing a name tag. *See Exhibit F,* Depo. Tr. M. Dillon, at 20:12-15. No other witness recalls seeing Ficklin in an Okemo uniform.

Moreover, what Ficklin may or may not have been wearing at the time of the alleged collision is irrelevant as all evidence proffered to date establishes that Ficklin was off-duty at the time of the alleged incident. *See Exhibit B*, at 40: 10-17, 56:11-22; *see also Exhibit C*.

Ficklin testified that on the date of the alleged collision, he worked in the morning from 6:59am – 8:11am, and then clocked out. *Exhibit B.,* at 55: 14-23. His time card corroborates this. *See Exhibit C*. After clocking out, Ficklin took off his uniform, and put on his own clothes. *Id.,* at 56:5-8. Ficklin then went skiing. He testified that while skiing on February 20, 2017, his skiing did not have any relation to his job duties and he considered himself to be like any other skier. *Id.,*

at 56: 15-22. Ficklin testified that he was not wearing his uniform or nametag at the time of the collision and never wore his Okemo uniform or nametag while skiing. *Id.,* at 29:24; 30:1-2.

Ficklin further testified that skiing and riding is not part of his job function as a lift operator. *Id.,* at 26:5-13, 17-21; *see also Exhibit D*. Ficklin testified the following the collision, he approached Plaintiff and informed her that he worked for Okemo to lessen the tension, and reassure Plaintiff that he would not leave the scene. *Exhibit B,* at 7017-24; 71:1. Ficklin never told Plaintiff that he was on duty. *Id.,* at 70:14-16.

In addition to Ficklin's testimony, Schmidt testified that Ficklin was a bottom-lift operator, and that skiing was specifically excluded from Ficklin's job description and job duties. *See Exhibit E*, 69: 14-23. Schmidt further testified that he is not aware of any other collisions that Ficklin was involved in at Okemo, or anyplace else, either before or after the incident at issue, and he had no reason to believe that Ficklin presented any type of different or higher risk as a skier with respect to skier-skier collisions than any other skier on the mountain. *Id.,* at 81:22-24, 82: 1-9.

Most significantly, the Okemo Lift Operations Department Specific Manual specifically states that skiing is not part of a lift operator's job function and that skiing is not allowed while on duty. *See Exhibit D*. It further provides that at no time should staff be in their uniform while skiing on their own time. *Id.* Moreover, the Okemo Employee Handbook from 2016-2017 specifically states that uniforms are only to be worn during working hours, and wearing uniforms while not working could result in dismissal. *See* Okemo Employee Handbook 2016-2017, at 40, attached hereto as *Exhibit G*.

Based on the forgoing, there is no evidentiary basis for a reasonable jury to find that Ficklin was acting within the scope of his employment at the time of the alleged collision. Accordingly, the Court should grant Okemo's Motion for Judgment as a Matter of Law.

## V.    CONCLUSION

The law requires Plaintiff to meet her burden of proof. In this instance, based on the record before this Court, and absent speculation or conjecture, there no credible evidence from which the jury could find that Plaintiff's injury *was not* caused by a hazard inherent in the sport of skiing. Plaintiff simply has not produced sufficient evidence to circumvent the statutory assumption of the risk imposed by 12 V.S.A. § 1037. Moreover, Plaintiff has failed to put forth any evidence to support her claim that Ficklin was Okemo's agent at the time of the collision. For all the forgoing, Okemo, respectfully requests that the Court enter judgment in its favor.

                              DEFENDANT,
                              OKEMO LIMITED LIABILITY
                              COMPANY D/B/A OKEMO
                              MOUNTAIN RESORT.

                          By /s/ Charles F. Gfeller
                              Charles F. Gfeller (ct18119)
                              Shrina B. Faldu (ct29581)
                              Seiger Gfeller Laurie LLP
                              West Hartford Center
                              977 Farmington Avenue, Suite 200
                              West Hartford, CT 06107
                              Tel. 860-760-8400
                              Fax. 860-760-8401
                              cgfeller@sgllawgroup.com
                              sfaldu@sgllawgroup.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of May, 2019, a copy of the foregoing was filed

14

electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

                                        /s/ Charles F. Gfeller
                                        Charles F. Gfeller (ct18119)