UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| STACIE RIVARD-PEDIGO | : | CIVIL ACTION NO.: |
| *Plaintiff*, | : | 3:17-cv-00568-WWE |
| v. | : | |
| OKEMO LIMITED LIABILITY COMPANY D/B/A OKEMO MOUNTAIN RESORT | : | |
| *Defendant*. | : | MAY 16, 2019 |

**DEFENDANT OKEMO LIMITED LIABILITY COMPANY
D/B/A OKEMO MOUNTAIN RESORT'S
MEMORANDUM OF LAW IN EXCEPTION TO VERDICT FORM AND
INTERROGATORIES AS PROPOSED BY THE COURT**

Defendant Okemo Limited Liability Company d/b/a Okemo Mountain Resort ("Okemo"), by and through its undersigned counsel, respectfully submits the following Memorandum of Law in Exception to the Court's Draft Verdict Form and Interrogatories. To the extent this Court amends the Draft Jury Instructions dated May 15, 2019 to remove a charge on 12 V.S.A. § 1037, Okemo objects to the proposed amendment and takes exception thereto, for the reasons set forth more fully herein.

**INTRODUCTION**

The court, prior to the start of evidence, issued a decision on the record that inherent risk would be part of the case and considered as a threshold issue. Specifically, the Court (J., Dooley) stated:

> [T]he jury will be charged on the statute and asked to render a decision under the statute as a **preliminary matter.**

*See* Trial Tr. 5/14/2019, at 19, attached hereto as *Exhibit A (emphasis added).*

Okemo relied on this ruling and proceeded with its defense utilizing the theory of inherent risk. Okemo's counsel mentioned the risks of skiing in his opening statement and has elicited testimony on the inherent risks of skiing from each factwho has testified as part of Plaintiff's case-in-chief. For the court to change course and remove the issue of inherent risk at this juncture, after Okemo has cross-examined most of Plaintiff's witnesses and (1) not instruct the jury on inherent risk and (2) not place the inherent risk issue as a threshold issue will clearly lead to an appeal of any verdict in Plaintiff's favor based on undue prejudice and a clear break from the binding precedent of the Second Circuit and the Vermont Supreme Court.

## ARGUMENT

Vermont is one of numerous jurisdictions which has preserved the doctrine of assumption of the risk for skiing and / or sport related injuries. Specifically, Vermont Statute Title 12, §1037, commonly referred to as the "Vermont Sports Injury Statute," provides:

> Notwithstanding the provisions of section 1036 [comparative negligence], a person who takes part in any sport accepts as a matter of law the dangers that inhere therein insofar as they are obvious and necessary.

*Id.*

The Vermont Sports Injury Statute was enacted in 1978, and its purpose was to "state the policy of th[e] state [of Vermont] ... [as to] the **liability of operators of ski areas** with respect to skiing injury cases ... by affirming the principles of law set forth in [prior cases], which established that there are inherent dangers to be accepted by skiers as a matter of law. *See Frant v. Haystack Group, Inc.,* 641 A.2d 765, 767 (Vt. 1994) (*emphasis added*) (quoting legislative history of statute); *Mahdessian v. Stratton Corp.*, 210 F.3d 355 (2d Cir. 2000) (whether the Sports Injury Statute applies is a threshold issue); **Sklar v. Okemo Mountain, Inc., 877 F.Supp. 85 (D. Conn. 1995) (applying Vermont law, and noting the burden of proving the existence of a legal**

**duty properly falls on plaintiffs, the burden of proving that the risk is not inherent in the sport also falls on plaintiffs**).

The Second Circuit Court of Appeals in *Dillworth v. Gambardella*, 970 F.2d 1113 (2d Cir. 1992), ruled on the applicability of Vermont Sports Injury Statute in cases involving skier-skier collisions.

The plaintiff in *Dillworth,* filed suit against a skier who allegedly collided with him while they were skiing at Stratton Mountain in Vermont. The jury returned a verdict in favor of the defendant skier. On appeal, the plaintiff argued that Vermont's Sports Injury Statute did not apply to claims against fellow skiers and that, even if it was applicable, a collision between skiers necessarily involved negligence by at least one of the two skiers and, thus, a collision could not be an inherent, obvious and necessary danger of skiing. *Id.,* at 1116. The Second Circuit Court of Appeals disagreed with both arguments. First, the Court ruled that the Sports Injury Statute is applicable to claims against fellow skiers. Second, the Court observed that a collision between two skiers does not necessarily mean that at least one of the skiers was negligent. Specifically, the Court stated:

> Collisions between skiers are not always and inevitably the product of at least one party's failure to use reasonable care. Unlike the proverbial barrel of flour that fell from a warehouse window ledge, *Byrne v. Boadle,* 159 Eng.Rep. 299 (1863), a presumption of negligence is not justified in every accidental encounter on a ski slope. *See* W. Prosser, The Law of Torts S 39, at 213-16 (4th ed. 1971). Instead, the trial court correctly noted a jury might conclude that some collisions between skiers may be as a result of the obvious and necessary risks inherent in skiing, and accidents might occur despite the exercise of ordinary and reasonable care and without negligence by either skier.

*Id.* at 1122.

Thus, in concluding that the Sports Injury Statute barred plaintiff's claims, the Court explained that "[o]ne skier is not the insurer of another skier's safety nor, absent negligence, is one

skier liable to another for inadvertent or accidental contact." *Id.* Indeed, the Court noted that even a skier who loses control "may pose a danger which is inherent, obvious and necessary" to participating in the sport of skiing. *Id.*

In *Frant v. Haystack Group, Inc.,* 641 A.2d 765, 767 (Vt. 1994), the first Vermont Supreme Court case to interpret the Sports Injury Statue, a minor plaintiff filed suit against a skier area operator after skiing into a wooden lift-corral post. *Id.,* at 766. In *Frant,* the Court explained that the term "assumption of the risk" incorporated two concepts – primary and secondary assumption of the risk. *Id.,* at 768. The Court went onto explain that primary assumption of the risk is a claim that the defendant, "was not negligent, i.e., either owed no duty or did not breach the duty owed." While secondary assumption of the risk, "is an affirmative defense to an established breach of duty." *Id., citing Meistrich v. Casino Arena Attractions, Inc.,* 31 N.J. 44 (1959).

The Court in *Frant* concluded that the Sports Injury Statute retained the doctrine of primary assumption of the risk in Vermont. *Id.,* at 769. As such, if a risk is assumed, the defendant owes no duty of care. *Id.* The *Frant,* Court explicitly stated that the "legislature avoided cataloguing fact-specific examples of 'obvious and necessary risks'" and intentionally left the issue to the **jury**. *Id.,* at 770-771 *(emphasis added).* In so doing, the Court noted that what constitutes an inherent risk may change over time, and so juries are tasked with the job of determining whether a particular risk is inherent in the sport of skiing. *Id.,* at 771. Because the legislature intentionally left the definition of "obvious and necessary risks" vague, the *Frant* court allowed witnesses to testify as to their understanding of inherent risks so that the jury could decide the issue. *Id.*

The Court in the case at bar has allowed Okemo's counsel to do this, as well, and yet now, after nearly Plaintiff's entire case has proceeded, the Court proposes to change the applicable law

4

and remove the inherent risk issue from the case, thereby placing Okemo in the position of having developed a theory that started out as viable but now may not be due to the change of applicable law mid-case. This will necessarily damage the credibility of Okemo's case and cause undue prejudice to Okemo.

Since the enactment of the Sports Injury Statute, Courts applying the Vermont Sports Injury Statute have consistently instructed the jury on the issue of inherent risk as a threshold issue. Indeed, in the factually analogous case, *Sklar v. Okemo Mountain, Inc.*, 877 F. Supp. 85, 86–89 (D. Conn. 1995), the plaintiff skier was injured when she collided with an off-duty ski instructor. Plaintiff filed a negligence claim against the skier area operator. The District Court, (Goettel, J.), entered judgment for the defendant ski area operator. The jury returned a verdict for the defendant, and plaintiff moved for a new trial pursuant to Fed. R. Civ. P. 59. The *Sklar* Court provided the following charge:

> Finally, before determining liability based on negligence, you must consider the application of the Vermont Sports Injury Statute. That statute states in part that, 'A person who takes part in any sport accepts as a matter of law the dangers that adhere therein insofar as they are obvious and necessary.'
>
> Thus, under Vermont law, a person who goes skiing accepts as a matter of law the inherent dangers of the sport insofar as those dangers are obvious to the participants and necessary to conduct the sport. Therefore, you must determine whether the risk of collisions between skiers is obvious or widely known by reasonable people familiar with skiing and ski areas.
>
> You must also determine whether the risk of such collisions is necessary in the sense of being impossible or unreasonably difficult or expensive to eliminate even if both skiers exercised reasonable care. Plaintiff must prove that such collisions are not an obvious and necessary part of skiing by a preponderance of the evidence. If you find that such collisions are an obvious and necessary part of the sport of skiing, you must return a verdict for the Defendant.

*Id., at 86.*

The *Sklar* Court also provided special interrogatories for use in the deliberations. The jury responded affirmatively to the first interrogatory, which asked: "Is a collision such as the one in this

case an inherent danger in the sport of skiing such that it is obvious to participants and necessary to the conduct of the sport?" *Id.* The jury returned a verdict for the defendant. *Id.*

**In considering the plaintiff's motion for a new trial, the *Sklar* Court stated that the Vermont Sports Injury Statue provides a defense based on primary assumption of risk and applied in a case where the plaintiff alleged the ski area operator was negligent for a collision between plaintiff and an off-duty employee**. The Court went onto note that in Vermont, the elements of a negligence claim are "the existence of a legally cognizable duty owed by the defendant to the plaintiff, breach of that duty, such breach as the proximate cause of plaintiff's injury, and actual damages." *Id.,* at 88.

**The Court further noted that "if the risk that gave rise to the accident is inherent in the sport, there is no duty and plaintiffs have no claim. Since the burden of proving the existence of a legal duty properly falls on Plaintiffs, the burden of proving that the risk is not inherent in the sport also falls on Plaintiffs."** *Id. (emphasis added).* Thus, the charge given to the jury in *Sklar* was proper. As noted above, the factual scenario in *Sklar* is analogous to the case at bar.

Furthermore, in *Mejia-Haffner et. al. v. Killington/PICO Ski Resort Partners, LLC*, 5:15-cv-175 (D. Vt. Nov 1, 2016), the plaintiff was injured while participating in a ski racing program at Killington Ski Resort ("Killington"). **In the Complaint, the plaintiff alleges "instructors or agents employed by Killington and acting within the scope of their employment, instructed her to unbuckle her ski boots as part of a training exercise," and after a skier ran over the tails of her skis, she fell and sustained injuries.** *See Mejia-Haffner,* Complaint at ¶¶ 7, 11, attached hereto as *Exhibit B*. Based on the allegations of the Complaint, it is clear that the plaintiff was pursuing a cause of action of negligence against Killington based on principles of vicarious liability. *Id.*

**In *Mejia- Haffner*, the Vermont District Court instructed the jury that inherent risk was a threshold issue, and the jury verdict reflects this.** Specifically, the first question the jury was asked, and which it answered, was "[d]o you find that plaintiff Meija-Haffner's injuries were the result of dangers which are inherent in the sport of skiing, obvious to a reasonable person participating the sport, and necessary to the sport?" *See Mejia- Haffner,* Jury Verdict, attached hereto as *Exhibit C; see also Mejia- Haffner,* attached hereto as *Exhibit D.*

**In addition to *Mejia-Haffner*, Okemo is aware of at least two additional Courts in the District of Vermont which have issued jury instructions providing a charge on the Sports Injury Statute prior to charges on plaintiff's claims of negligence against ski areas**. *See Erickson v. The Stratton Corporation,* Case No. 5:11-cv-00051-CR (D. Vt. Aug, 29, 2013; and *Taylor v. Stratton Corporation,* Case No. 2:09-cv-00297-WKS (D. Vt. Jan. 23, 2012)[1]

Plaintiff relies on the case of *Dalury v. S-K-I, Ltd*., 164 Vt. 329 (1995), to support her claim that the Sports Injury Statute is inapplicable to this matter. However, the primary issue in *Dalury,* was whether an exculpatory agreement was enforceable, and the Court did not even address whether the alleged injury was caused by a risk inherent in the sport under the Sports Injury Statute. Moreover, the theory of liability in *Dalury,* was one of premises liability. As such the Court, in *Dalury,* was concerned with a ski area operator releasing itself from liability under an exculpatory agreement for hazards, which as a possessor of land, the ski area was in a unique position to foresee. *Id.,* at 335. The *Dalury* case is distinguishable from the present matter, as the primary issue in the case at bar is whether a skier-skier collision is an inherent risk, and whether Okemo is vicariously liable for the actions of Ficklin.  As such, the jury should not even contemplate whether

---

[1] All jury instructions are attached hereto as *Exhibit E.*

Okemo, through its supposed agent, was negligent until it has first decided the issue of inherent risk.

Despite Plaintiff's best attempts to argue otherwise, the law of Vermont is clear – whether injuries were caused by a risk inherent in the sport of skiing is a threshold issue of fact for the jury to determine. Indeed, as noted above, the Vermont Supreme Court in *Frant v. Haystack Group, Inc.,* 641 A.2d 765 (Vt. 1994), explicitly stated that the "legislature avoided cataloguing fact-specific examples of 'obvious and necessary risks'" and intentionally left the issue to the jury. *Id.,* at 770-771. Because the legislature intentionally left the definition of "obvious and necessary risks" vague, the *Frant* court allowed witnesses to testify as to their understanding of inherent risks so that the jury could decide the issue. *Id.* Following the *Frant* analysis, this necessarily means that evidence must be allowed on the inherent risk issue.

Okemo's position is further bolstered by the decisions in various Federal and State Courts who have uniformly held *as a matter of law* that that ski area operators are not liable for collisions between customers and employees. In so holding, the courts note that skier-skier collisions are an inherent risk of the sport, and whether the skier causing the collision is an on-duty or off-duty employee of a ski area, is irrelevant to the analysis of whether a duty of care was owed.

The case *Glover v. Vail Corp.*, 955 F. Supp. 105 (D. Colo. 1997), *aff'd,* 137 F.3d 1444, (10th Cir. 1998), is directly on point with the issues in the present matter. In *Glover,* a skier sued Vail Ski Resort ("Vail") for injuries sustained in a collision with an off-duty employee of Vail. The court held that under the Colorado Ski Safety Act, the skier's collision was an inherent danger and risk of skiing such that he could not recover from the ski area operator (Vail) for injuries sustained in the collision.

The off-duty employee in *Glover* was employed by Vail as a ticket seller. On the date of the incident, he clocked in for his shift at approximately 7:30 a.m., and *s*hortly after 1:00 p.m., his supervisor asked him if he wanted to clock out to go skiing. *Id.,* at 106. The employee agreed, and he was told to be back by 3:00 p.m. The off-duty employee was skiing with a Vail employee ski pass. *Id.* Just prior to the collision, another Vail employee, a snow making foreman, saw the off-duty employee skiing "faster than [he] had ever seen anyone before." *Id.* The foreman recognized the off-duty employee and admitted that he had the authority to admonish him or take the employee's ski pass away for reckless skiing. *Id.*

The court held that the Colorado Ski Safety Act of 1979 (the Act), Colo.Rev.Stat. § 33–44–101 *et seq.,* precluded recovery as section 112 of the Act states: "Notwithstanding any judicial decision or any other law or statute to the contrary, ... no skier may make any claim against or recover from any ski area operator for injury resulting from any of the inherent dangers and risks of skiing." In its decision the court also noted that it had "serious doubts whether the off-duty employee was acting as an agent or employee of Vail at the time of the accident as he was skiing on his own time and for his own pleasure." *Id.*

In another case from the District of Colorado, *Johnson ex rel. Johnson v. Bodenhausen*, 835 F. Supp. 2d 1092 (D. Colo. 2011), the court reached a holding similar to that of the *Glover* court. In *Johnson,* the plaintiffs filed suit against Breckenridge Ski Resort ("Breckenridge"), after its *on-duty employee*, a ski instructor, collided with plaintiffs' minor son. The court granted Breckenridge's motion to dismiss on grounds that Colorado Revised Statute § 33–44–122, which provides "notwithstanding any judicial decision or any other law or statute to the contrary, ... no skier may make any claim against or recover from any ski area operator for injury resulting from any of the inherent dangers and risks of skiing" barred plaintiffs' claims. *Id.*, at 1095. The court

9

rejected plaintiffs' policy argument that maintaining ski area operator liability based on the negligent acts of its employees was sound public policy because ski area employees are often low-paid and would not be able to satisfy judgments against them. *Id.*, at 1096. Specifically, the court noted that other skier-skier collisions involve skiers who do not have the financial capability to compensate injured skiers; however, this "is the risk that skiers take by participating in what can at times be a dangerous sport." *Id., citing* Colo.Rev.Stat. § 33–44–109(1) ("Each skier expressly accepts and assumes the risk of and all legal responsibility for any injury to person or property resulting from any of the inherent dangers and risks of skiing").

The District of New Hampshire has also concluded that as a matter of law, a skier-skier collision constitutes an inherent risk of skiing for which a plaintiff cannot recover against a ski area operator, even if the collision occurred with an employee of the ski area operator. *See Hanus v. Loon Mountain Recreation Corp.*, 2014 DNH 075, 2014 WL 1513232, at *2 (D. N.H. Apr. 16, 2014).[2] The Court in *Hanus* noted that the mere fact that the plaintiff "collided with a ski area employee who was behaving negligently or recklessly does not remove the collision from the realm of skiing's inherent risks." *Id.,* at *3.

In addition to Federal Courts, various State Courts have also addressed the issue. One such court is the North Carolina Court of Appeals in the case *Haltiwanger v. Phoenix Ski Corp.*, 219 N.C. App. 650, 2012 WL 1115978 (2012). In *Haltiwanger,* the plaintiff filed suit against Phoenix Ski Corporation d/b/a Cataloochee Ski Area ("Cataloochee"), after she collided with an off-duty lift operator. *Id.,* at * 1. Plaintiff alleged Cataloochee was negligent in its training and supervision of employees. *Id.* Cataloochee moved for summary judgment on grounds that it was not vicariously liable for its off-duty employee. *Id.* The trial court granted Cataloochee's motion and plaintiff appealed. *Id.*

---

[2] All unreported decisions are attached hereto as *Exhibit F*.

The Appellate Court affirmed the lower court decision. On appeal, the court noted that at the time of the collision, the off-duty lift operator was skiing pursuant to a complimentary ski pass provided by Cataloochee to employees. The off-duty employee had worked for Cataloochee earlier in the day, but had finished performing his duties at the time of the collision. The court further noted although Cataloochee had a policy allowing employees to ski on the premises from Sunday–Friday (non-holidays) and nights, its employees were not required to utilize this policy. *Id.,* at \*4.

The appellate court ultimately held that Cataloochee was not vicariously liable for its off-duty employee, as the off-duty employee was not under its control at the time of the collision, and has such, "his status was the same as any other individual enjoying the use of the slopes." *Id.* The court further noted that the plaintiff failed to provide any evidence to show how the off-duty employee's actions could be considered in furtherance of Cataloochee' business. He was a ski lift operator, and skiing was neither required nor necessary as part of his job. *Id.* Indeed, the court aptly noted his "actions were clearly some private matter of his own or outside the legitimate scope of his employment." *Id.*

In the California Appellate decision, *Towns v. Davidson*, 147 Cal. App. 4th 461 (2007), the plaintiff filed suit after a collision with and *on-duty employee*, Herbert Davidson ("Davidson"). Davidson was employed by defendant Mammoth Mountain Ski Area ("Mammoth") as a ski host manager. Part of his job duties included skiing the slopes, checking with other ski hosts on the hill, and talking to the guests. He also was allowed to ski one or two runs during the day, and on occasion could do so with a spouse, relative or friend. At those times, he would still be on duty as a ski host and would be wearing a Mammoth uniform. Mammoth's policy manual for hosts, the Host Manual, required him to "always ski as a Host" when in uniform, and "to look out for the safety of our fellow employees and guests on and off the Hill." *Id.,* at 465.

The plaintiff filed suit against both Davidson and Mammoth. She alleged Davidson was skiing in a negligent and reckless manner. She also alleged Mammoth negligently failed to train and supervise Davidson. The defendants moved for summary judgment. They claimed the doctrine of primary

11

assumption of risk excused them from liability for negligence and that there were no facts establishing recklessness. *Id.,* at 466. The trial court agreed and granted summary judgment in defendants' favor. Plaintiff appealed from the judgment, claiming primary assumption of risk does not apply because disputed issues of material fact existed on whether Davidson was a coparticipant in the sport when skiing while on duty, and whether Davidson was reckless in his skiing. *Id.*

On appeal, the Court of Appeal affirmed the lower court decision, holding that the doctrine of primary assumption of the risk applied, and that Davidson's employment was irrelevant. The court specifically noted, that **"whether or not Davidson was employed by Mammoth, the inherent risks of injury from skiing down a snow-covered mountain include accidentally careless conduct by other skiers resulting in collisions. This risk is so inherent and obvious it goes without saying plaintiff assumed that risk no matter who the other skiers may be."** *Id.,* at 469. The court further noted that **"Mammoth's act of employing Davidson and requiring him to be on the slope did not increase the risk of injury inherent in skiing. Davidson was just another coparticipant in a dangerous activity who could accidentally cause injury. That he was also an employee subject to an employment policy to ski safely did not increase the risk of injury inherent in an already dangerous sport."** *Id.,* at 470 (*emphasis added*).

The *Towns* court also made a public policy argument, noting that holding Davidson and Mammoth liable would "fundamentally alter the nature of the sport. Davidson would no longer be able to ski as aggressively as the sport allows, and Mammoth would no longer hire persons to perform any type of skiing as part of their job, no matter the benefit and safety they can provide to Mammoth's guests. This is the very outcome primary assumption of risk is designed to prevent. Davidson's status as an employee of Mammoth did not bar operation of primary assumption of risk." *Id.*

Finally, in *Camire v. Gunstock Area Comm'n*, 166 N.H. 374 (2014), a plaintiff filed suit against Gunstock Mountain, after a collision with a Gunstock employee. At the time of the collision, the off-duty employee, a ski instructor, was snowboarding prior to conducting a lesson. *Id.,* at 375. The trial

court granted Gunstock's motion for summary judgment on all of the claims. The Appellate Court affirmed.

On appeal, the Appellate Court noted that New Hampshire's ski statue provides "each person who participates in the sport of skiing, snowboarding … accepts as a matter of law, the dangers inherent in the sport, and to that extent may not maintain an action against the operator for any injuries which result from such inherent risks, dangers, or hazards. The categories of such risks, hazards, or dangers which the skier or passenger assumes as a matter of law include but are not limited to the following: ... *collisions with other skiers or other persons ....*" *Id.,* at 377. The Appellate Court held that the ski statute barred plaintiff's vicarious liability claims. In light of this holding, the court did not decide whether the instructor was acting within the scope of his employment at the time of the collision or whether the claims were also barred by Gunstock's liability releases. *Id.,* at 379. The only issue that needed to be address was inherent risk. The agency issue was never even reached.

In addition to the case law on the issue, a majority of states with ski statues specifically enumerate that a skier-skier collision is an inherent risk assumed in the sport of skiing. *See* Me. Rev. Stat. tit. 32, § 15217 ("each person who participates in the sport of skiing accepts, as a matter of law, the risks inherent in the sport … The responsibility for a collision between any skier while skiing and any person or object is solely that of the skier or skiers involved in the collision and not the responsibility of the ski area operator or its agents, representatives or employees"); Massachusetts G.L. c. 143, §§ 71H–71S ("A skier skiing downhill shall have the duty to avoid any collision with any other skier, person or object on the hill below him, and, except as otherwise provided in this chapter, the responsibility for collisions by any skier with any other skier or person shall be solely that of the skier or person involved and not that of the operator"); N.H. Rev. Stat. Ann. § 225-A:24 ("Each person who participates in the sport of skiing … accepts as a matter of law, the dangers inherent in the sport, and to that extent may not maintain an action against the operator for

13

any injuries which result from such inherent risks, dangers, or hazards. The categories of such risks, hazards, or dangers which the skier or passenger assumes as a matter of law include… collisions with other skiers); N.J. Stat. Ann. § 5:13-5 ("A skier is deemed to have knowledge of and to assume the inherent risks of skiing … created by other skiers, and all other inherent conditions."); Wis. Stat. Ann. 167.33(2)(f) (stating a "ski operator is not liable for any injury or death that occurs as a result of any condition or risk accepted by the participant including the risk of collision with other participants in alpine sports, employees of a ski area operator, or ski area infrastructure"); Idaho Code Ann. § 6-1106 ("The responsibility for collisions by any skier while actually skiing, with any person, shall be solely that of the individual or individuals involved in such collision and not that of the ski area operator"); W. Va. Code Ann. § 20-3A-5 ("If while actually skiing, any skier collides with any object or person, except an obviously intoxicated person of whom the ski area operator is aware, the responsibility for such collision shall be solely that of the skier or skiers involved and not that of the ski area operator."); Mich. Compiled Law 408.342(2) ("Each person who participates in the sport of skiing accepts the dangers that inhere in that sport insofar as the dangers are obvious and necessary. Those dangers include, but are not limited to … collisions with…other skiers").

Given the overwhelming authority cited above, including binding precedent from the Second Circuit and Vermont Supreme Court and persuasive precedent from the United States District Court of Vermont, as well as the significant prejudice that will be caused to Okemo if the court abandons the Vermont Sports Injury Statute at this juncture of the case, it is clear that the issue of inherent risk is a threshold issue of fact for the jury to determine prior to considering Plaintiff's claims of negligence. Accordingly, Okemo respectfully requests that this Court reconsider its proposed change to the law of the case and instruct the jury that the Vermont Sports Injury Statute analysis is a threshold issue for the jury to decide before any other issue.

                    **DEFENDANT,**
                    **OKEMO LIMITED LIABILITY**
                    **COMPANY D/B/A OKEMO**
                    **MOUNTAIN RESORT.**

By /s/ Charles F. Gfeller
   Charles F. Gfeller (ct18119)
   Shrina B. Faldu (ct29581)
   Seiger Gfeller Laurie LLP
   West Hartford Center
   977 Farmington Avenue, Suite 200
   West Hartford, CT 06107
   Tel. 860-760-8400
   Fax. 860-760-8401
   cgfeller@sgllawgroup.com
   sfaldu@sgllawgroup.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of May, 2019, a copy of the foregoing was hand-delivered to all parties.

      /s/ Charles F. Gfeller
Charles F. Gfeller (ct18119)