# Exhibit B

Case 3:17-cv-00568-KAD   Document 103-2   Filed 05/16/19   Page 2 of 7
Case 3:17-cv-00568-WWE   Document 84-2   Filed 05/08/19   Page 2 of 7
Case 5:15-cv-00175-gwc   Document 1   Filed 07/29/15   Page 1 of 6

IN THE UNITED STATES DISTRICT COURT
for the
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2015 JUL 29  PM 2:43

CLERK
BY_____
DEPUTY CLERK

CLAUDIA MEJIA-HAFFNER and STEVEN R. HAFFNER,

    Plaintiffs,

v.

KILLINGTON/PICO RESORT PARTNERS, LLC,

    Defendant.

Civil Case No. 2:15-cv-175

## COMPLAINT
(Jury Demand)

### Statement of Jurisdiction

1. Plaintiff Claudia Mejia-Haffner ("Claudia") is a citizen of Massachusetts.

2. Plaintiff Steven R. Haffner ("Steven") is also a citizen of Massachusetts and Claudia's spouse.

3. Defendant Killington/Pico Resort Partners, LLC ("Killington") is a foreign Vermont limited liability company organized under the laws of Delaware, with its principal business office in Utah and is the owner and operator of the Killington Ski Area located in Killington, Vermont.

4. The amount in controversy, without interest and costs, exceeds the sum specified by 28 U.S.C. § 1332.

### FIRST CLAIM FOR RELIEF
(Negligence and Gross Negligence)

5. In or about Fall 2009, Plaintiffs enrolled in Killington's 2009 Race Camp Program ("Program"). As it had been during prior years, Killington's 2009 Program was open to the general public and promoted and marketed to skiers of all abilities, including skiers without experience in competitive skiing.

1

Case 3:17-cv-00568-KAD   Document 103-2   Filed 05/16/19   Page 3 of 7
Case 3:17-cv-00568-WWE   Document 84-2   Filed 05/08/19   Page 3 of 7
Case 5:15-cv-00175-gwc   Document 1   Filed 07/29/15   Page 2 of 6

6. Prior to the Program, Claudia had had no experience in competitive skiing.

7. On December 7, 2009, Claudia was seriously injured while participating in the Program when, after instructors or agents employed by Killington and acting within the scope of their employment, instructed her to unbuckle her ski boots as part of a training exercise, Claudia fell and her ski bindings failed to release.

8. The instruction given by the Killington instructors to Claudia and the other participants to unbuckle their ski boots and begin skiing was given at the top of Killington Mountain before the first ski run of the Program.

9. At the time and place this instruction was given, which was within the boundaries of Killington's Killington Ski Area in Killington Vermont ("Ski Area"), there was heavy skier congestion and merging trails and slopes with most of the skiers present not being participants in the Program.

10. Although the participants of the Program were promised their own private training area, the Killington instructors and coaches advised the area was not then available.

11. After skiing about 50 yards with her ski boots unbuckled, as she had been instructed, an unknown non-participant skier ran over the tails of Claudia's skis, which, together with her unbuckled ski boots, caused Claudia to fall.

12. As a result of her boots not being buckled, Claudia's ski bindings failed to release or otherwise function, causing serious injuries to her knee and ankle, including a stress fracture to her knee and sprains to her knee and ankle.

13. The instructor and Killington knew or should have known that skiing with unbuckled ski boots might disable Claudia's ski bindings and was otherwise extremely dangerous.

14. Yet, at no time did the instructor, or anyone else employed by Killington, warn

Case 3:17-cv-00568-KAD   Document 103-2   Filed 05/16/19   Page 4 of 7
Case 3:17-cv-00568-WWE   Document 84-2   Filed 05/08/19   Page 4 of 7
Case 5:15-cv-00175-gwc   Document 1   Filed 07/29/15   Page 3 of 6

Claudia that her bindings would likely not release or function to protect her in a fall without her ski boots buckled.

15. By instructing Claudia to ski with her ski boots unbuckled and failing to warn her of the dangers of such activity, Killington violated all applicable standards of care owed to Claudia and the other participants.

16. Killington had control over and the opportunity to maintain and inspect the Ski Area to foresee and control hazards such as the one involved in this action.

17. Killington also had control over, and the opportunity to properly train, their instructors and employees in proper risk management and otherwise to guard against the negligence of their agents and employees.

18. Despite Killington's opportunity to control and train their ski instructors and other personnel concerning the subject hazard, they failed to do so.

19. As a proximate and foreseeable result of Killington's negligence and gross negligence, failure to warn, and to properly train and supervise, Claudia suffered serious personal and economic injury and damages to be determined at trial, but not less than $1,000,000.00, for which Killington is liable to her.

## SECOND CLAIM FOR RELIEF
(Breach of Contract)

20. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 18, as if fully stated and alleged herein.

21. Plaintiffs performed all of their obligations under their agreement with Killington respecting the Program.

22. Killington materially breached the Program enrollment agreement with plaintiffs

3

Case 3:17-cv-00568-KAD   Document 103-2   Filed 05/16/19   Page 5 of 7
Case 3:17-cv-00568-WWE   Document 84-2   Filed 05/08/19   Page 5 of 7
Case 5:15-cv-00175-gwc   Document 1   Filed 07/29/15   Page 4 of 6

by failing to perform its promises to provide a separate training area for Program enrollees or properly trained and qualified instructors.

23. As a proximate and foreseeable consequence of Killington's aforesaid breaches, Plaintiffs suffered economic losses to be determined at the trial of this action, but totaling at least $7,500.00, including without limitation paid Program tuitions, hotel and transportation costs, and lost earnings and vacation.

24. By reason of the foregoing, Killington is liable to Plaintiffs for breach of contract in the amount of at least $7,500.00, plus interest from December 7, 2009.

### THIRD CLAIM FOR RELIEF
(Loss of Consortium)

25. Plaintiff Steven repeats and realleges each and every allegation contained in paragraphs 1 through 18, as if fully stated and alleged herein.

26. As a proximate result of Claudia's injuries, Steven was deprived of her affection and companionship, including without limitation her companionship for the entire 2009-2010 ski season.

27. In addition, Claudia's inability to ski that entire ski season proximately caused her weight gain and depression, in turn causing Steven further loss of her love, affection and companionship.

28. By reason of the foregoing, Killington is liable to Steven for damages to be determined at trial, but not less than $100,000.00.

Case 3:17-cv-00568-KAD Document 103-2 Filed 05/16/19 Page 6 of 7
Case 3:17-cv-00568-WWE Document 84-2 Filed 05/08/19 Page 6 of 7
Case 5:15-cv-00175-gwc Document 1 Filed 07/29/15 Page 5 of 6

### Demand for Judgment

Therefore, plaintiffs demand judgment against Killington for at least $1,107,500, plus interest from December 7, 2009 and costs.

Dated: July 28, 2015

                                           CLAUDIA MEJIA-HAFFNER and
                                           STEVEN R. HAFFNER
                                           *Plaintiffs Pro Se*

                                           _____
                                           Claudia Mejia-Haffner

                                           _____
                                           Steven R, Haffner

Case 3:17-cv-00568-KAD Document 103-2 Filed 05/16/19 Page 7 of 7
Case 3:17-cv-00568-WWE Document 84-2 Filed 05/08/19 Page 7 of 7
Case 5:15-cv-00175-gwc Document 1 Filed 07/29/15 Page 6 of 6

### Demand for Judgment

Therefore, plaintiffs demand judgment against Killington for at least $1,107,500, plus interest from December 7, 2009 and costs.

Dated: July 28, 2015

                                                                    CLAUDIA MEJIA-HAFFNER and
STEVEN R. HAFFNER
Plaintiffs Pro Se

*[signature]* Claudia Mejia-Haffner

*[signature]* Steven R. Haffner

5